

# EXHIBIT A

**Master Lease**

| | |
|---|---|
| The "Master Lease": Master Lease Number ▇3455 Dated December 15, 2021 | |
| "Lessee": | |
| NCP Management, LLC., 20635 Kuykendahl Road, Spring, TX 77379 | |
| North Houston Surgical Hospital LLC dba Spring Hospital, 3610-2 N Josey Lane, Suite 223, Carrollton, TX 75007 | |
| Fax: | E-mail: ▇▇▇▇▇▇ |
| "Lessor": The Huntington National Bank, 1405 Xenium Lane North (PCC180), Plymouth, MN 55441 | |
| Fax: 319-833-4577 | E-mail: customerservice@financediv.com |

## Master Lease Terms and Conditions

1. LEASE. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the personal property and/or services described in an Equipment Schedule or Equipment Schedules (each, a "Schedule") to this Master Lease signed by Lessor and Lessee from time to time upon the terms and conditions set forth herein and in the Schedule (such property and services, together with all replacements, repairs, and additions incorporated therein or affixed thereto, being referred to herein as the "Equipment"). Lessee authorizes Lessor to add to any Schedule, or make necessary corrections to, any serial numbers or other identification of the Equipment when known. Each Schedule shall be considered a separate lease pursuant to the terms of this Master Lease. The term "this lease" as used herein shall mean a Schedule incorporating therein the terms and conditions set forth in this Master Lease. Capitalized terms shall have the meanings given to them in the Schedule or herein. In the event of a conflict between the terms of any Schedule and the terms of this Master Lease, the terms of the Schedule shall control. Notwithstanding any provision herein or in any Schedule to the contrary, Lessor shall have no obligation to purchase, fund or lease to Lessee any Equipment if (i) all of Lessor's requirements shall not have been satisfied on or before the date that Lessor's credit approval shall expire with respect to the lease of such Equipment, or (ii) any material adverse change in Lessee's condition or business shall have occurred as of the date of such proposed purchase, funding or lease from that considered by Lessor in connection with the credit approval for such lease. In the event that either of the foregoing shall occur, Lessor may, in its sole discretion, cancel the lease of the Equipment covered by the applicable Schedule, and Lessee shall purchase from Lessor any items of Equipment then subject to the lease within five days after Lessor's request to do so for a price equal to Lessor's cost of such items, plus any other amounts advanced by Lessor under such Schedule, plus all accrued but unpaid interim rent thereon, as provided for in paragraph 3 below. Lessee shall also pay any applicable sales and use tax on such sale.

2. TERM. The term of this lease with respect to each item of Equipment shall begin on the date it is accepted by Lessee and shall continue for the number of consecutive months from the Commencement Date shown in the related Schedule (the "Initial Term") unless earlier canceled, terminated or extended as provided herein. Lessee shall promptly inspect each item of Equipment upon delivery and, if acceptable in all respects, when the last item of Equipment is delivered, execute and deliver a certificate of acceptance, in form acceptable to Lessor. Lessee hereby authorizes Lessor to fill in the Commencement Date in the Schedule based upon the date appearing on the delivery and acceptance certificate. If the final item of Equipment is delivered and accepted on the first day through the 15th day of the month, the Commencement Date is the 15th day of the month; and if the final item of Equipment is delivered and accepted on the 16th day through the end of the month, the Commencement Date is the first day of the following month.

3. RENT. Lessee shall pay basic rent for the Initial Term of this lease, and any renewal term, in periodic installments each in the amount shown in the related Schedule as the Rent Payment. Installments shall be payable as set forth in the related Schedule. Lessee shall pay advance installments and any security deposit, each as shown in the related Schedule, on the date Lessee executes such Schedule. If the final cost of the Equipment (all amounts Lessor pays in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buy out amounts, before application of any subsidies or like amounts) plus other amounts financed under the Schedule is more or less than the Total Cost shown in the Schedule (which is based on an estimate), the amount of each Rent Payment and the mandatory or optional fixed purchase price, if any, will be adjusted up or down to provide Lessor the same yield it would have obtained if such final cost had been the same as such Total Cost. The Schedule will be amended to reflect the final Total Cost and adjusted Rent Payment and, if applicable, purchase price. Lessee agrees to execute an amendment reflecting such adjustments; provided that Lessor's written notice to Lessee of adjustments of 10% or less shall be effective as an amendment, without Lessee's signature. The Rent Payment for this lease has been indexed to the Swap Rate. "Swap Rate" means, as of the applicable date, the "ICE Swap Rate - USD Rates 1100" as published by Intercontinental Exchange, Inc. on its website, www.theice.com, for a similar term to the Initial Term of this Lease (or, if no rate is quoted for a particular maturity, a rate will be interpolated by Lessor based on similar maturities), for the date that is three (3) business days prior to the applicable date (or, if no rate is quoted for such date, the next business day for which such rate is quoted); or, if such index is no longer available or so published, the rate determined by Lessor under a similar successor index chosen by Lessor in its sole discretion. If such Swap Rate as of the date that the final item of Equipment under this lease is accepted is more than the Swap Rate as of the date of the applicable Schedule, Lessor may increase the Rent Payment accordingly, and Lessee hereby agrees to sign an amendment reflecting such increase by no later than the Commencement Date of this lease. In addition to basic rent payable from the Commencement Date, Lessee agrees to pay interim rent with respect to each separate item of Equipment covered by a particular Schedule from the date it is delivered and accepted to the Commencement Date, at a daily rate equal to (i) Lessor's cost of such item specified in such Schedule or in an applicable invoice, multiplied by (ii) the Interim Rent Daily Factor specified in such Schedule. Interim rent accruing each calendar month shall be payable by the 10th day of the following month and in any event on the Commencement Date.

4. PAYMENTS, LATE FEES AND SECURITY DEPOSIT. Time is of the essence. If any installment of interim rent or basic rent or any other amount payable by Lessee hereunder is not paid within ten (10) days of the date when due, Lessor may impose a late fee of up to 10% of the amount of the installment, but in no event more than permitted by applicable law. Lessee may from time to time make telephonic requests for, and Lessee hereby authorizes, Lessor or its agents to make and draw checks or drafts on a checking account to be designated by Lessee, payable to Lessor or order, to pay rent and other amounts due hereunder, plus Lessor's standard per item fee for making and drawing such check or draft not to exceed the maximum amount permitted by law. Lessor may rely on any such request made by a person it believes has authority to make such request on behalf of Lessee. Payments received shall be applied by Lessor in such order of application as Lessor shall determine, in its sole discretion. Lessee has deposited or will deposit with Lessor the sum shown as "Security Deposit", if any, on each Schedule as a security deposit and not as advance rent. Upon the occurrence of any Event of Default, Lessor may, at its option, apply any security deposit to any amounts owed under this lease by Lessee, in which event Lessee shall promptly pay a sufficient amount to Lessor to restore the security deposit to the full amount specified in the Schedule. Following termination of this lease, Lessor shall return any remaining balance of the security deposit(s), if any, without interest, to Lessee if and only if Lessee has fulfilled all of its obligations under this lease.

5. TAXES, FEES AND LESSOR'S EXPENSES. In addition to the rent, Lessee agrees to promptly pay when due, or reimburse Lessor upon receipt of Lessor's invoice, all fees, assessments, charges and sales, use, property, excise and other taxes paid, payable or required to be collected by Lessor, however designated, which are levied or assessed by any governmental authority on the rent, this lease or the Equipment or its purchase, ownership, use, lease, sale or value, together with any penalties or interest in connection therewith. Lessor shall file all personal property tax returns and pay all such taxes when due and Lessee shall reimburse Lessor therefor and file all returns required to be filed by Lessee. Upon request by Lessor, Lessee shall prepare and file all tax returns relating to taxes for which Lessee is

responsible hereunder which Lessee is permitted to file under the laws of the applicable taxing jurisdiction. Lessee shall promptly pay all costs, charges, expenses and obligations of every kind and nature incurred by or on behalf of Lessor regarding the importation, shipment, delivery, possession, use, lease, tax treatment, return, repossession, storage and transfer of any item of Equipment. In addition, Lessee agrees to pay Lessor a fee, in an amount determined by Lessor, not to exceed the maximum amount from time to time permitted by applicable law, for any check or automatic payment withdrawal request that is returned to Lessor because of insufficient funds available in Lessee's account or a stop payment. If Lessor, in its discretion, pays any tax, fee, charge or other amount described in this paragraph, Lessee shall reimburse Lessor, therefor on demand, together with Lessor's administrative and other costs of paying and invoicing such amounts and, if Lessee fails to pay Lessor any such amount within ten (10) days of such demand, Lessee shall pay interest thereon until paid at the rate of 18% per annum or the maximum rate allowable by law, whichever is less.

6.      LESSOR DISCLAIMER OF WARRANTIES. LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE CONDITION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF, THE ABSENCE OF ANY CLAIM OF INFRINGEMENT OR THE LIKE WITH RESPECT TO, OR ANY OTHER MATTER CONCERNING, THE EQUIPMENT AND EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES OR ANY OTHER WARRANTIES IMPLIED BY LAW. LESSOR MAKES NO WARRANTIES WITH RESPECT TO ANY PATENT, COPYRIGHT, TRADEMARK, TRADE NAME OR TITLE RELATING TO THE EQUIPMENT OR LESSEE'S RIGHTS TO ANY SUCH INTELLECTUAL PROPERTY. LESSEE HEREBY WAIVES ANY CLAIM IT MIGHT HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE OR EXPENSE CAUSED BY THE EQUIPMENT OR BY ANY DEFECT THEREIN, OR BY THE USE OR MAINTENANCE OF, OR SERVICING OR ADJUSTMENT TO, THE EQUIPMENT AND, AS TO LESSOR, LEASES THE EQUIPMENT AS-IS AND WITH ALL FAULTS AND WITHOUT WARRANTY OF ANY KIND. LESSOR WILL NOT BE LIABLE FOR ANY LOSS OR INTERRUPTION OF OR DAMAGE TO LESSEE'S BUSINESS ON ACCOUNT OF ANY MECHANICAL FAILURE OR DELAY IN CONNECTION WITH THE FURNISHING OR USE OF THE EQUIPMENT.  Lessee acknowledges that Lessor is not a dealer or manufacturer of Equipment of any kind and is not the seller of the Equipment, and that each unit of Equipment is of a type, size, design and capacity selected solely by Lessee.  Lessee also acknowledges that Lessor supplies the Equipment without any obligation to install, test, erect, service or maintain the Equipment. If the Equipment is not properly installed, does not operate as represented or warranted by the manufacturer or seller thereof, or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the manufacturer or seller and no such occurrence shall relieve Lessee of any of its obligations under this lease.  The only warranty applicable to any Equipment is the manufacturer's warranty, if any (in the case of new Equipment) and Lessor makes no warranty to Lessee.  Lessee acknowledges receipt of the manufacturer's warranty with respect to any new Equipment.  So long as Lessee is not in default under this lease, Lessor assigns to Lessee any manufacturer's, seller's or other warranty, whether express or implied, on the Equipment and any claim that Lessor may have as owner of the Equipment against the manufacturer or supplier or any other person.  All claims or actions on any warranty shall be made or prosecuted by Lessee, at its sole expense, and Lessor shall have no obligation whatsoever to make any claim on such warranty. Lessor is not liable for any modification, breach or rescission of any warranty or service agreement. Any agreement that Lessee may have with any third party, including any manufacturer or vendor, relating to services shall be separate and distinct from this lease and Lessor shall not have any obligations thereunder. Lessee acknowledges that this lease constitutes a "finance lease" under UCC Article 2A in all respects, and that Lessor's sole obligations to Lessee hereunder is not to interfere with Lessee's quiet enjoyment of the Equipment so long as Lessee is not in default hereunder. Subject to the foregoing sentence and to the extent permitted by law, Lessee unconditionally and irrevocably waives any and all rights and remedies against Lessor at law or in equity (including, without limitation, any rights and remedies granted Lessee under Article 2A of the Uniform Commercial Code and/or the right to reject any Equipment or repudiate this lease).  Lessee agrees that Lessor assumes no liability for and makes no representation as to the treatment by Lessee of this lease, the equipment or the rent payments for financial statement or tax purposes.  In the event that there is a material adverse change in Lessee's financial condition, as determined by Lessor, prior to Lessor's payment for any Equipment to be leased hereunder, Lessee agrees that Lessor shall have no obligation to purchase such Equipment and lease it to Lessee.

7.      DELIVERY, OWNERSHIP, LOCATION AND INSPECTION. Lessee shall pay for all transportation, insurance and any other charges with respect to delivery and installation of the Equipment.  The Equipment shall at all times remain the property of Lessor. Lessee shall have no right, title or interest in the Equipment, except as set forth herein.  Lessee at its expense shall protect and defend the title and interest of Lessor and keep the Equipment free of all claims and liens other than claims and liens created by or arising through Lessor.  The Equipment shall remain personal property regardless of its attachment to realty, and Lessee agrees to take such action at its expense as may be necessary to prevent any third party from acquiring any interest in the Equipment. Lessee will provide a suitable place, within the continental United States, for the Equipment and shall not remove the Equipment from the Equipment Location without the prior written consent of Lessor, which consent shall not be unreasonably withheld.  Lessor may inspect the Equipment and Lessee's records relating to the Equipment at any time during regular business hours and to the extent required, Lessee shall take all actions and provide such support as may be necessary for Lessor to access restricted areas in order to inspect the Equipment.

8.      ADDITIONAL DOCUMENTS AND INFORMATION; COSTS AND EXPENSES. Lessee shall execute and deliver to Lessor such other documents and provide such information as Lessor may reasonably deem necessary to evidence or protect Lessor's interests in the Equipment and Lessor's rights under this lease. Lessee authorizes Lessor to file such instruments as may be necessary to protect Lessor's interests in the Equipment (including financing statements and certificates of title) without Lessee's signature and if such signature is required by law, Lessee appoints Lessor as Lessee's attorney-in-fact to execute such items, in Lessee's name. To the extent permitted by applicable law, upon demand, Lessee will reimburse and pay Lessor's costs and expenses, including attorneys' fees and costs, with respect to the underwriting, documentation, making and any amendment and other modification of this lease and all related documents, including without limitation the costs of filing all financing statements and other perfection documents and all amendments thereto, and continuations, releases and terminations thereof, in all public offices in which Lessor may deem filing to be appropriate, obtaining and reviewing searches of filing offices and organizational records; obtaining, reviewing, negotiating and executing other documentation required by Lessor hereunder, requested by Lessee or otherwise deemed necessary or appropriate in connection with this lease and the related documents. Any document fee collected by Lessor in advance is intended to cover only Lessor's costs of filing an initial financing statement against Lessee and of preparing this lease and the standard documents related to this lease; and additional costs, reimbursable by Lessee, may be incurred in connection with the closing of this lease transaction or thereafter. Upon request by Lessor, Lessee shall verify in writing the location of the Equipment and provide Lessor with all records relating to the Equipment, including without limitation, maintenance information . Lessee shall furnish Lessor with such financial information as Lessor may from time to time request. Lessee hereby warrants and represents that all financial statements heretofore and hereafter delivered to Lessor by or on behalf of Lessee have been and will be prepared in accordance with generally accepted accounting principles consistently applied, and all statements and data submitted to Lessor in connection with this lease shall be complete and accurate in all respects.

9.      INDEMNITY. Lessee shall hold Lessor harmless from, and pay to Lessor the amount of, any fine, penalties or other amounts for which Lessor is held liable as a result of, and any legal expenses Lessor has arising out of, the return, use, condition, ownership or operation of any item of Equipment, including any claims made under the strict liability doctrine, and as a result of any lien, encumbrance or claim made on the Equipment by anyone, including Lessee's employees and agents. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages (including reasonable attorneys' fees), obligations, liabilities and liens (including any of the foregoing arising or imposed without Lessee's fault or negligence, or in connection with latent or other defects, or any claim for patent, trademark or copyright infringement or under the doctrine of "strict liability"), imposed or incurred by or asserted against Lessor or its successors or assigns, arising out of the manufacture, purchase, lease, possession, operation, condition, return or use of the Equipment, by operation of law or by Lessee's failure to comply with the terms of this lease.  Upon written notice by Lessor of the assertion of any claim hereby indemnified against, Lessee shall assume full responsibility for the defense thereof.

10.     USE AND REPAIRS. Lessee shall use the Equipment within its recommended capacities and only for the purpose(s) for which it was designed. Lessee shall comply with all laws, regulations and ordinances relating to the possession and use of the Equipment including, without limitation, job safety, health, fire and environmental laws applicable to the Equipment.  Lessee will maintain the Equipment in good repair, condition and working order and will furnish all parts and services required therefor, all at its expense, ordinary wear and tear excepted.  Lessee will use only manufacturer's approved fluids, replacement parts and components in the performance of any maintenance and repair of the Equipment.  Lessee shall, at its expense, make all modifications and improvements to the Equipment required by law,

and shall not make other modifications or improvements without the prior written consent of Lessor. All parts, modifications and improvements to the Equipment shall, when installed or made, immediately become the property of Lessor and part of the Equipment for all purposes.

11.   LOSS OR DAMAGE. Lessee hereby assumes and shall bear the entire risk of loss, theft, damage or destruction of all or any item of the Equipment from any cause whatsoever; and no loss, theft, damage or destruction of all or any item of the Equipment shall relieve Lessee of its obligation to pay rent or of any other obligation under this lease, which shall continue in full force and effect, notwithstanding such loss, theft, damage or destruction. The risk of loss shall pass to Lessee on the earlier of (i) delivery of the Equipment to a carrier for shipment to Lessee or (ii) tender of the Equipment to Lessee. In the event of damage to any item of Equipment, Lessee shall immediately place the same in good repair (ordinary wear and tear excepted). Lessee shall promptly notify Lessor of any loss, theft, material damage or destruction of the Equipment and, if Lessor determines that any item of Equipment is lost, stolen, destroyed, worn out or damaged beyond repair as a result of ordinary use, neglect, abuse or any other cause whatsoever, Lessee, at the option of Lessor, will: (a) replace the same with similar Equipment in good repair, or (b) pay to Lessor: (i) all rent and other amounts due from Lessee hereunder with respect to such item but unpaid at the date of such payment plus (ii) all rent with respect to such item for the balance of the term of this lease not yet due at the time of such payment, discounted from the respective dates installment payments would be due, at the rate of 3% per annum, plus (iii) the greater of (x) ten percent of the Total Cost related to such item as set forth in the Schedule, or (y) Lessor's "Anticipated Residual Value" of such item of Equipment, as determined by the books of Lessor as of the Commencement Date of the applicable Schedule, or (z) the Mandatory Purchase Price of such item, if applicable. Upon payment of such amount in immediately available funds to Lessor, such item shall become the property of Lessee, Lessor will transfer to Lessee, without recourse or warranty, all of Lessor's right, title and interest therein, the rent with respect to such item shall terminate, and the basic rental payments on the remaining items shall be reduced accordingly. Lessee shall pay any sales and use taxes due on such transfer. Any insurance or condemnation proceeds received shall be credited to Lessee's obligation under this paragraph, in such order of application as Lessor, in its sole discretion, may determine, and Lessor shall be entitled to any surplus.

12.   INSURANCE. Lessee shall obtain and maintain on or with respect to the Equipment at its own expense (a) liability insurance insuring against liability for bodily injury and property damage with a minimum limit of $1,000,000.00 combined single limit or such greater amount as may be set forth in any Schedule or as may be prescribed by any applicable state law specifying minimum insurance requirements, and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the full replacement value of the Equipment. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee in at least the minimum amounts required herein naming Lessor as an additional insured thereunder for the liability coverage and as loss payee for the property damage coverage. Each such policy shall be in such form, including a maximum deductible, and with such insurers as may be satisfactory to Lessor, and shall contain a clause requiring the insurer to give to Lessor at least 30 days' prior written notice of any alteration in the terms of such policy or the cancellation thereof, and a clause specifying that no action or misrepresentation by Lessee shall invalidate such policy. Lessor shall be under no duty to ascertain the existence of or to examine any such policy or to advise Lessee in the event any such policy shall not comply with the requirements hereof. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts for loss or damage under any such physical damage insurance policy. In the event Lessee fails to procure, maintain, pay for or provide Lessor with evidence of the insurance required by this lease, or to pay any fees, assessments, charges or taxes as required in this lease, Lessor shall have the right, but not be obligated, to obtain insurance covering Lessor's interest in the Equipment from an insurer of Lessor's choice, or pay said fees, assessments, charges and taxes, as the case may be. In that event, Lessee shall reimburse Lessor upon demand for the cost thereof, together with interest until paid at the rate of 18% per annum or the maximum rate allowable by law, whichever is less, and failure to pay the same shall constitute an Event of Default under this lease. At Lessor's discretion, Lessor may add all costs of acquiring and maintaining any insurance provided for herein, including without limitation all premiums therefor and all premium finance charges, documentation fees, tracking fees and all other fees and charges incurred by Lessor in connection therewith, plus fees for Lessor's services in placing and maintaining such insurance (all such premiums, costs, fees and charges are referred to herein, collectively, as the "Insurance Charge"), to the amounts due from Lessee under this lease. Lessee will pay the Insurance Charge in equal installments allocated to the remaining Rental Payments due under this lease (plus interest on such allocation at 18% per annum or the maximum rate allowable by law, whichever is less). NOTHING IN THIS LEASE WILL CREATE AN INSURANCE RELATIONSHIP OF ANY TYPE BETWEEN LESSOR AND ANY OTHER PERSON.

13.   RETURN OF THE EQUIPMENT. Unless Lessee purchases the Equipment or the term of this lease has been extended or renewed, each strictly in accordance with the terms and conditions set forth in this lease, upon the expiration or earlier cancelation or termination of this lease, Lessee shall, at its sole expense and risk, in accordance with applicable industry standards and manufacturers recommendations, de-install, disassemble, pack, crate, insure and return the Equipment to Lessor (all in accordance with applicable industry standards) at any location in the continental United States selected by Lessor. The Equipment shall be in the same condition as when received by Lessee, reasonable wear and tear resulting from normal and proper use excepted, capable and ready for reuse by another user without the need for repair or refurbishment (and, if applicable, in the condition set forth in the Schedule or any rider or addendum thereto), and shall be in good condition and working order as required by this lease, shall be free and clear of any liens, shall comply with all applicable laws and regulations and shall include all manuals, specifications, repair and maintenance records and similar documents. Lessee must be able to demonstrate that the Equipment can perform at its performance specifications according to the manufacturer's standards. If requested by Lessor, at least thirty (30) days prior to expiration or upon earlier termination of this lease, Lessee shall cause the manufacturer's representative or a qualified equipment maintenance provider acceptable to the Lessor to perform a comprehensive inspection of the Equipment. Following such inspection, a certification letter from the inspecting technician as to the working condition and performance of the Equipment in conformance with the manufacturer's performance specifications must be provided to the Lessor. The cost of the inspection, assessment and written certification shall be borne by the Lessee. If it is determined that maintenance or repairs are needed to meet the manufacturer's performance specifications, at Lessor's request Lessee shall cause such repairs and maintenance to be made at Lessee's expense or remit the cost of such maintenance or repairs to the Lessor as payment for extraordinary wear and tear of the Equipment. Until any Equipment is returned as required above, all terms of this lease shall remain in full force and effect with respect thereto including, without limitation, obligations to pay rent and to insure and repair such Equipment.

14.   DEFAULT. Each of the following events shall constitute an "Event of Default" hereunder: (a) Lessee shall fail to pay any installment of rent or other payment required hereunder when due; (b) Lessee shall fail to observe or perform any other covenant or agreement to be observed or performed by Lessee hereunder and such failure continues for ten (10) days following written notice thereof by Lessor to Lessee; (c) Lessee or any guarantor of this lease or any partner of Lessee if Lessee is a partnership shall cease doing business as a going concern or make an assignment for the benefit of creditors; (d) Lessee or any guarantor of this lease or any partner of Lessee if Lessee is a partnership shall admit in writing an inability to pay debts as they come due, authorize or voluntarily file, or have filed against it involuntarily, a petition for liquidation, reorganization, adjustment of debt, or similar relief under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver, or liquidator shall be appointed of it or of all or a substantial part of its assets; (e) any individual Lessee, guarantor of this lease, or partner of Lessee if Lessee is a partnership shall die; (f) any representation or warranty made by Lessee or any guarantor of this lease in conjunction with this lease or financial or credit information submitted by or on behalf of Lessee or any guarantor of this lease shall prove to have been false or materially misleading when made; (g) an event of default shall occur under any other obligation Lessee or any guarantor of this lease owes to Lessor; (h) any material indebtedness of Lessee or any guarantor of this lease shall be accelerated following a default thereunder or, if any such indebtedness is payable on demand, payment thereof shall be demanded; (i) if Lessee or any guarantor of this lease is a corporation, partnership or limited liability company, more than 50% of the equity interests therein shall become owned by, or subject to control or the power to vote by, parties who had no such interest on the date this lease begins; (j) Lessee or any guarantor of this lease shall divide or shall consolidate with or merge into, or sell or lease all or substantially all of its assets to, any individual, corporation, or other entity; (k) Any guarantor shall repudiate, revoke or purport to revoke such guarantor's guaranty of this lease or shall fail to observe or perform any of the obligations of guarantor under such guaranty; or, (l) Lessee no longer occupies the premises where any Equipment subject to this lease is located, or the mortgagee or owner of such premises asserts the right to take possession thereof or to exercise eviction or other remedies under the mortgage or lease of the premises.

15.   REMEDIES. Upon the occurrence of an Event of Default and at any time thereafter, Lessor may, with or without canceling or terminating this lease, exercise any one or more of the following remedies as Lessor in its sole discretion may lawfully elect: (a) Upon written notice to Lessee cancel or terminate this lease and any or all Schedules to this Master Lease; (b) Declare immediately due and payable and recover from Lessee, as liquidated damages and not as a penalty, an amount equal to the

sum of (i) all rent and other amounts then due and unpaid plus (ii) all rent and any other payments to become due hereunder for the full term of this lease discounted from their respective due dates at the rate of 3% per annum, plus (iii) the greater of (A) ten percent (10%) of the Total Cost related to the Equipment as set forth in the applicable Schedule, or (B) Lessor's "Anticipated Residual Value" of the Equipment, as determined by the books of Lessor as of the Commencement Date of the applicable Schedule, or (C) the Mandatory Purchase Price of the Equipment, if applicable, and such sum of items (i) through (iii) ("Lessor's Damages") shall thereupon become immediately due and payable without further notice or demand; provided, however, that upon the occurrence of an Event of Default specified in paragraph 14 (d), such amount shall automatically become and be immediately due and payable without notice or demand of any kind and all rights of Lessee to use the Equipment shall terminate but Lessee shall be and remain liable as provided in this paragraph 15; (c) Proceed by appropriate court action to enforce performance by Lessee of the applicable covenants of this lease and/or recover damages for the breach thereof; (d) Whether or not this lease is canceled or terminated, repossess the Equipment wherever located, with or without notice to Lessee or legal process, and for this purpose Lessor and/or its agents may enter upon any premises of or under the control or jurisdiction of Lessee or any agent of Lessee, without liability therefor to Lessee, and remove the Equipment; or upon demand by Lessor, Lessee agrees to deliver the Equipment to Lessor in accordance with paragraph 13; (e) Lessor may recover interest on the unpaid balance of Lessor's Damages from the date it becomes payable until fully paid at the rate of the lesser of 18% per annum or the highest rate permitted by law, and may in any event recover legal fees and other expenses incurred by reason of an Event of Default or the exercise of any remedy hereunder, including expenses of inspection, repossession, repair, storage, transportation, testing, disassembly, crating, loading, cribbing charges, re-assembly and disposition of the Equipment; (f) Lessor may exercise any other right or remedy available to it by law or by agreement. In the event Lessor repossesses the Equipment, Lessor shall either retain the Equipment in full satisfaction of Lessee's obligation hereunder or use reasonable efforts to sell or lease each item of Equipment in such manner and upon such terms as Lessor may determine in its sole discretion. The proceeds of such sale or lease shall be applied to reimburse Lessor for Lessor's Damages and any additional amount due under clause (e) above. Lessor shall be entitled to any surplus and Lessee shall remain liable for any deficiency. No remedy given in this paragraph is intended to be exclusive, and each shall be cumulative but only to the extent necessary to permit Lessor to recover amounts for which Lessee is liable hereunder. No express or implied waiver by Lessor of any breach of Lessee's obligations hereunder shall constitute a waiver of any other breach of Lessee's obligations hereunder.

16.     ASSIGNMENT. WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE WILL NOT SELL, ASSIGN, TRANSFER (VIA MERGER, DIVISION, OR OTHERWISE), SUBLET, PLEDGE, OR OTHERWISE ENCUMBER OR PERMIT A LIEN ARISING THROUGH LESSEE TO EXIST ON OR AGAINST ANY INTEREST IN THIS LEASE OR THE EQUIPMENT. Lessor may assign its interest in this lease and sell or grant a security interest in all or any part of the Equipment without notice to or the consent of Lessee. If Lessee is given notice of such assignment, it shall acknowledge receipt of that notice in writing. Each assignee or mortgagee from Lessor shall have all of the rights, but none of the obligations, of Lessor under this lease. Lessee shall not assert against any assignee and/or mortgagee any defense, counterclaim or offset that Lessee may have against Lessor. Lessee's obligation to pay rent to the assignee shall be absolute and unconditional and shall not be subject to any defense or offset.

17.     NON-CANCELABLE AND UNCONDITIONAL OBLIGATION. This lease cannot be canceled or terminated except as expressly provided herein. This lease is a net lease and Lessee agrees that its obligation to pay rent and any other amounts payable hereunder is absolute and unconditional and shall not be subject to any abatement, reduction, setoff or defense of any kind. If any Schedule is deemed at any time to be a lease intended as security: (i) Lessee grants Lessor a security interest in the Equipment to secure its obligations under this lease and all other indebtedness at any time owing by Lessee to Lessor; (ii) Lessee agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code; and (iii) such Schedule shall be construed in a manner so that interest, the applicable interest rate or other charge shall not exceed, in any event, the maximum amount of time price differential, rate, interest or amount allowed by applicable law, and any excess payment will be applied to the payments due under such Schedule as a prepayment of principal, and any remaining excess will be refunded to Lessee. and (iv) if Lessee is an individual and the principal amount of such Schedule is $100,000 or more, such Schedule is made pursuant to Minn. Stat. Sec. 334.01; this lease is made under Minn. Stat. Sec. 334.022 if Lessee is an "organization" as defined therein.

18.     INDEMNIFICATION FOR LOSS OF TAX BENEFITS. Lessor's loss of, or loss of the right to claim, or recapture of, all or any part of the federal or state income tax benefits Lessor anticipated as a result of entering into this lease and owning the Equipment is referred to herein as a "Loss." If for any reason this lease is not a true lease for federal or state income tax purposes, or if for any reason (even though this lease may be a true lease) Lessor is not entitled to depreciate the Equipment for federal or state income tax purposes in the manner that Lessor anticipated when entering into this lease, and as a result Lessor suffers a Loss, then Lessee agrees to pay Lessor, as additional Basic Rent under this lease, a lump-sum amount which, after the payment of all federal, state, and local income taxes on the receipt of such amount, and using the same assumptions as to tax benefits and other matters Lessor used in originally evaluating and pricing this lease, will in the reasonable opinion of Lessor maintain Lessor's net after-tax rate of return with respect to this lease at the same level it would have been if such Loss had not occurred. Lessor will notify Lessee of any claim that may give rise to indemnity hereunder. Lessor shall make a reasonable effort to contest any such claim but shall have no obligation to contest such claim beyond the administrative level of the Internal Revenue Service or other taxing authority. In any event, Lessor shall control all aspects of any settlement and contest. Lessee agrees to pay the legal fees and other out-of-pocket expenses incurred by Lessor in defending any such claim even if Lessor's defense is successful. Notwithstanding the foregoing, Lessee shall have no obligation to indemnify Lessor for any Loss caused solely by (a) a casualty to the Equipment if Lessee pays the amount Lessee is required to pay as a result of such casualty, (b) Lessor's sale of the Equipment other than on account of an Event of Default hereunder, (c) failure of Lessor to have sufficient income to utilize its anticipated tax benefits or to timely claim such tax benefits, and (d) a change in tax law (including tax rates) effective after the Lease begins. For purposes of this paragraph, the term "Lessor" shall include any member of an affiliated group of which Lessor is (or may become) a member if consolidated tax returns are filed for such affiliated group for federal income tax purposes. Lessee's indemnity obligations under this paragraph shall survive cancelation and termination of the Lease.

19.     SURVIVAL OF INDEMNITIES, REPRESENTATIONS AND WARRANTIES; CROSS DEFAULT. All representations, warranties and indemnities of Lessee made or agreed to in this lease and any certificates delivered in connection herewith shall survive expiration, cancelation or termination of this lease. Lessee hereby agrees that any default by Lessee in the payment of rent or performance of any other term or condition of any lease or loan between Lessee and Lessor, or under any Schedule, whether previously or hereafter entered into, shall at the option of Lessor constitute an Event of Default in all leases, loans or Schedules, including this lease.

20.     GOVERNING LAW AND CONSTRUCTION. THIS LEASE, AND ALL MATTERS ARISING FROM THIS LEASE, INCLUDING ALL INTEREST AND FINANCE CHARGES HEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, FEDERAL LAW AND, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, BY THE LAWS OF THE STATE OF MINNESOTA WITHOUT GIVING EFFECT TO CONFLICT OF LAW PROVISIONS. LESSEE HEREBY CONSENTS TO JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS SITTING IN THE STATE OF MINNESOTA FOR PURPOSES OF RESOLVING ALL DISPUTES OF ANY NATURE WHATSOEVER REGARDING THE LEASE, OR ANY TRANSACTION CONTEMPLATED HEREBY, AND LESSEE HEREBY WAIVES OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF JURISDICTION OR VENUE IN THE FEDERAL OR STATE COURTS OF MINNESOTA. LESSOR AND LESSEE AGREE THAT A SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE PROPERLY SERVED AND SHALL CONFIRM PERSONAL JURISDICTION IF SERVED PERSONALLY, BY CERTIFIED MAIL TO IT AT ITS ADDRESS DESIGNATED PURSUANT TO THE LEASE, OR AS OTHERWISE PROVIDED UNDER THE RESPECTIVE RULES OF THE STATE OR FEDERAL COURTS OF MINNESOTA. ANY PROVISION OF THIS LEASE WHICH MAY BE PROHIBITED OR UNENFORCEABLE IN ANY JURISDICTION SHALL NOT, AS TO SUCH JURISDICTION, INVALIDATE THE REMAINING PROVISIONS HEREOF AND SHALL NOT INVALIDATE OR RENDER UNENFORCEABLE SUCH PROVISION IN ANY OTHER JURISDICTION. LESSEE AGREES THAT, AT LESSOR'S SOLE ELECTION AND DETERMINATION, LESSOR MAY SELECT AN ALTERNATIVE FORUM, INCLUDING ARBITRATION OR MEDIATION, TO ADJUDICATE ANY DISPUTE ARISING OUT OF THIS LEASE. THE PARTIES HERETO, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY

IN ANY ACTION OR PROCEEDING RELATING TO THIS LEASE, INCLUDING ANY LITIGATION REGARDING THE ENFORCEMENT OF THIS LEASE OR ANY RELATED AGREEMENTS.

21. LESSEE REPRESENTATIONS AND WARRANTIES. Lessee represents and warrants to Lessor with regard to this lease that: (a) The execution, delivery and performance of this lease has been duly authorized by all necessary action on the part of Lessee and this lease constitutes a valid and binding obligation of Lessee enforceable against Lessee in accordance with its terms; (b) The individual executing this lease on behalf of Lessee is duly authorized; (c) Neither the execution or delivery by Lessee of this lease, nor the performance thereof by Lessee, conflicts with, results in a breach of or constitutes a default or violation of Lessee's applicable organizational documents, including, as applicable, its Certificate of Incorporation, By-Laws, articles of organization, operating agreement or partnership agreement, applicable law, court order or any agreement or other instrument to which Lessee is a party or by which it is bound; (d) Lessee is duly organized and in good standing in its state of organization, does not do business under a trade or assumed name, is duly qualified to do business in each jurisdiction where the Equipment is located and where such qualification is required; (e) Lessee's exact legal name is as shown above, and: (i) if Lessee is an individual, such legal name is exactly as stated on Lessee's valid and unexpired state driver's license, or alternative state identification, issued by Lessee's primary state of residence ("Lessee State ID"); or (ii) if Lessee is a legal entity, such legal name is as stated on Lessee's applicable organizational documents; and Lessee will not change its legal name, will not change its chief executive office or state of organization (if a legal entity) or its principal residence (if an individual), and will not permit its Lessee State ID to expire, become invalid, or fail to be properly renewed, (if an individual) without, in each case, giving Lessor at least 30 days' prior written notice of any such event, and, at any time during this Lease, Lessee will, upon request of Lessor, provide copies of its Lessee State ID (if an individual) or applicable organizational documents (if a legal entity); (f) Lessee, if an individual, is a citizen or lawful permanent resident of the United States; (g) No approval, consent or authorization is required from any governmental authority with respect to the execution, delivery or performance of this lease, or if any such approval, consent or authorization is required, it has been obtained; (h) Each item of Equipment is leased and will be used solely for business purposes, and the Equipment will not be used for personal, family or household purposes; and (i) Lessee shall not allow any Blocked Person(s) to have an ownership interest in or control of Lessee. "Blocked Person" means any person or entity (A) that is now or at any time on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government, or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Lessor, to be a person with whom Lessor is not permitted to extend credit to or with regard to whom, a debtor-creditor relationship may result in penalties against Lessor or limitations on Lessor's ability to enforce a transaction.

22. MISCELLANEOUS. This lease constitutes the entire agreement between Lessee and Lessor with respect to the subject matter hereof, including any commitments and representations made by Lessor, and there is no understanding or agreement, oral or written, which is not set forth herein. To the extent that Lessor previously made any commitment or representation, oral or written, all such commitments and representations are superseded and replaced by the terms of this lease. Except as expressly set forth herein, this lease may not be amended or modified except by a writing manually signed by Lessor and Lessee. This lease shall be binding upon and inure to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder to Lessee or Lessor shall be deemed to have been given when delivered personally, deposited with a nationally recognized overnight courier (with all fees pre-paid), delivered via facsimile or e-mail (with confirmation of transmission), or deposited in the United States mails, certified or registered mail, addressed to recipient at its address set forth above or at such other address as may be substituted therefor by notice given pursuant to the terms hereof. Lessee hereby agrees that Lessor, including its vendors, service providers, partners, affiliates, successors and assigns, may contact Lessee at any telephone number provided to Lessor, by placing voice telephone calls (including the use of automatic telephone dialing systems or prerecorded voice messaging) or, in the case of wireless telephones or other wireless devices, by sending email or automated (SMS) text messages. In the event there is more than one Lessee named herein or in any Schedule, the obligations of each shall be joint and several. Each party's electronic signature on this Master Lease, each Schedule and any related documents shall be unconditionally valid and legally enforceable, and each party agrees not to contest the validity or enforceability of any electronic signature (or the authority of the electronic signer to sign). This Master Lease, each Schedule and any related documents may, in Lessor's sole discretion, be delivered and/or reproduced by facsimile, optical scanning or other electronic means ("e-copy") and such e-copy or a printed version thereof shall be enforceable as an original and admissible as such in any court or other proceeding, provided that there shall be only one original of the Master Lease and each Schedule and it shall bear the original ink or electronic signature of Lessor and be marked "Original." To the extent that any Schedule constitutes chattel paper (as that term is defined by the Uniform Commercial Code), a security or ownership interest intended to be created through the transfer and possession of the Schedule can be done only by the transfer of the "Original" bearing the original ink or electronic signature of Lessor; provided that, if the "Paper Out" process shall have occurred, or if there shall simultaneously exist both the "Paper Out" printed version and an electronic version of this Master Lease or any Schedule, then the "Paper Out" printed version of such document bearing the legend "Original" applied by Lessor shall constitute the sole chattel paper original and authoritative version. If Lessor permits Lessee to deliver this lease or any related document to Lessor via facsimile or other electronic means, Lessee shall deliver to Lessor, promptly on request, such document bearing Lessee's original "wet ink" signature; provided that neither delivery nor failure to deliver the document bearing Lessee's original "wet ink" signature shall limit or modify the representations and agreements set forth above. Without limiting Lessor's right to make legally permitted disclosures, Lessee agrees that Lessor may disclose to equipment dealers, suppliers, and manufacturers, applicable franchisors, and prospective assignees of Lessor, financial, credit, account and other information about Lessee. Lessee hereby authorizes any person to release to Lessor credit, financial and account information relating to Lessee. Lessee authorizes, and represents that all Lessee's principals have authorized, Lessor to obtain such credit bureau reports and make such other credit inquiries with respect to Lessee and such principals as Lessor deems appropriate throughout the term of this lease; on written request, Lessor will identify any reporting agency used for such reports. Lessee shall execute and deliver to Lessor such other documents and provide such information, including information identifying the owners of Lessee and its affiliates and their respective ownership interests, as Lessor may reasonably deem necessary to comply with laws or regulations applicable to Lessor or Lessee, including laws and regulations requiring Lessor to obtain Lessee's certification of its beneficial owner(s) prior to making payment(s) to Lessee during or after the term of this lease. This lease shall not become effective or binding until executed by Lessor.

Under federal law, Lessor must obtain, verify and record identifying information for each person opening an account. Lessor will ask for Lessee's name, address, date of birth and other identifying information. Lessor may also ask for Lessee's driver's license or other identifying documents.

| | | | |
|---|---|---|---|
| Lessor: | The Huntington National Bank | By: _Jean Hlsi_ | Title: **VP Operations** |
| Lessee: | NCP Management, LLC. | By: _[signature]_ CAFDF7D2451945A | Mirza N. Baig - Manager |
| Lessee: | North Houston Surgical Hospital LLC dba Spring Hospital | By: _[signature]_ CAFDF7D2451945A | NCP Management, LLC. as Manager By: Mirza N. Baig – Manager of NCP Management |
| | | By: _Rashid Syed_ 44695731FB4343E | Rashid Syed - Manager/CEO |

ORIGINAL

 **Huntington**                    **Addendum to Master Lease**

THIS ADDENDUM TO MASTER LEASE DATED DECEMBER 15, 2021 (this **"Addendum"**) to that certain MASTER LEASE NUMBER ▉3455 dated December 15, 2021 (the **"Original Master Lease"**) is made by and among THE HUNTINGTON NATIONAL BANK (together with its successors and assigns, **"Lessor"**), NCP MANAGEMENT, LLC. and NORTH HOUSTON SURGICAL HOSPITAL LLC DBA SPRING HOSPITAL (collectively, and together with their permitted successors and assigns, **"Lessee"**). Capitalized terms used in this Addendum and not otherwise defined herein shall have the respective meanings specified in the Original Master Lease.

WHEREAS, Lessor and Lessee desire to enter into, from time to time, on the terms and conditions set forth in the Original Master Lease as supplemented by this Addendum (as so supplemented, the **"Master Lease"**), an Equipment Schedule or Equipment Schedules (each a **"Schedule"**) incorporating the terms and conditions of the Master Lease for the lease or financing of certain personal property and fixtures financed by the Lessor under the Schedules (each such Schedule incorporating the terms and conditions of the Master Lease, each a **"Lease"**), and related documents and instruments (as amended or modified from time to time, hereinafter collectively referred to as the "**Financing Agreements**");

WHEREAS, Lessor and Lessee desire to supplement the Original Master Lease as provided in this Addendum, on the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the mutual promises and agreements contained in the Original Master Lease to which this Addendum is attached, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

*Amendments and* Addendums *to Original Master Lease.*

1.    Paragraph 7 of the Original Master Lease is amended by adding the following at the end of such paragraph:

> In addition, to further secure the payment and performance of Lessee's obligations under each other Lease executed and delivered under this Master Lease and to secure the payment and performance of all other obligations owing to Lessor under all the Leases executed and delivered pursuant to this Master Lease, Lessee acknowledges and agrees that the Equipment under each Lease secures the obligations under each other Lease executed and delivered pursuant to this Master Lease and upon an Event of Default under any Lease, Lessor may repossess the Equipment under any other Lease executed and delivered pursuant to this Master Lease as collateral to secure the obligations of Lessee under all or any such Lease executed and delivered pursuant to this Master Lease. Additionally, Lessee acknowledges and agrees that at Lessor's discretion upon an Event of Default under any Lease, Lessee's obligation to return Equipment to Lessor under paragraph 13 of this Master Lease shall apply to the Equipment under all or any Leases executed and delivered pursuant to this Master Lease and identified by Lessor to Lessee.

2.    Paragraph 14 of the Original Master Lease is amended and restated in its entirety as follows:

7703004070829209785No. 0852455 – 12/15/2021

DEFAULT. Each of the following events shall constitute an "Event of Default" hereunder: (a) Lessee shall fail to pay any installment of rent or other payment required hereunder or under any Lease when due or Lessee shall fail to observe or perform any other covenant or agreement to be observed or performed by Lessee in paragraph 12 or paragraph 23; (b) Lessee shall fail to observe or perform any other covenant or agreement to be observed or performed by Lessee hereunder or under any Lease and such failure continues for ten (10) days following written notice thereof by Lessor to Lessee; (c) Lessee or any guarantor of any Lease or any partner of Lessee if Lessee is a partnership shall cease doing business as a going concern or make an assignment for the benefit of creditors; (d) Lessee or any guarantor of any Lease or any partner of Lessee if Lessee is a partnership shall admit in writing an inability to pay debts as they come due, authorize or voluntarily file, or have filed against it involuntarily, a petition for liquidation, reorganization, adjustment of debt, or similar relief under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver, or liquidator shall be appointed of it or of all or a substantial part of its assets; (e) any individual Lessee, guarantor of any Lease, or partner of Lessee if Lessee is a partnership shall die; (f) any representation or warranty made by Lessee or any guarantor of any Lease in conjunction with any Lease or financial or credit information submitted by or on behalf of Lessee or any guarantor of any Lease shall prove to have been false or materially misleading when made; (g) an event of default shall occur under any other obligation Lessee or any guarantor of any Lease owes to Lessor; (h) any material indebtedness of Lessee or any guarantor of any Lease shall be accelerated following a default thereunder or, if any such indebtedness is payable on demand, payment thereof shall be demanded; (i) if Lessee or any guarantor of any Lease is a corporation, partnership or limited liability company, more than 50% of the equity interests therein shall become owned by, or subject to control or the power to vote by, parties who had no such interest on the date such Lease begins; (j) Lessee or any guarantor of any Lease shall divide or shall consolidate with or merge into, or sell or lease all or substantially all of its assets to, any individual, corporation, or other entity; (k) Any guarantor shall repudiate, revoke or purport to revoke such guarantor's guaranty of any Lease or shall fail to observe or perform any of the obligations of guarantor under such guaranty; or, (l) Lessee no longer occupies the premises where any Equipment subject to any Lease is located, or the mortgagee or owner of such premises asserts the right to take possession thereof or to exercise eviction or other remedies under the mortgage or lease of the premises.

3.    Paragraph 21 of the Original Master Lease is amended by adding the following at the end of such paragraph:

Lessee represents, warrants and covenants to Lessor with regard to this lease that: (i) Lessee holds a valid leasehold interest in the real estate where the Equipment under each Lease is and will be located (the "Real Property") and has good and marketable title in such leasehold interest and there exists no other mortgage, pledge, lien, security interest, charge or other encumbrance of any nature whatsoever on or with respect to such Real Property, (ii) the Equipment is deemed to be and will remain personal property and will not be deemed to be affixed to or a part of the real estate on which it may be situated, notwithstanding that the Equipment or any part thereof may be or hereafter become in any manner physically affixed or attached to real estate or any building thereon, (iii) Lessee shall provide Lessor with a waiver or waivers of interest in the Equipment from any mortgagee or any other party having an interest in the real estate on which the Equipment will be located and/or landlord of the real estate on which the Equipment will be

located, and (iv) Lessee shall not create, incur, assume or permit to exist any mortgage, pledge, lien, security interest, charge or other encumbrance of any nature whatsoever on any of the real estate where the Equipment under a Lease is or will be located or enter into any agreement to sell or assign or enter into any sale/leaseback arrangement of such real estate without the prior written consent of Lessor; provided, that if Lessor or its assigns is furnished with a waiver of interest in the Equipment under such Lease acceptable to Lessor or its assigns in their respective discretion from any party taking an interest in any such real estate prior to such interest taking effect, such consent shall not be unreasonably withheld.

4.    The Original Master Lease shall be further amended by the addition of the following covenants in a new paragraph 23, which will be deemed to be a part of the Original Master Lease:

23.          Additional Covenants.

(a)    The Lessee shall maintain a standard system of accounting in accordance with GAAP, and will furnish to the Lessor and its duly authorized representatives such information with respect to the business and financial condition as the Lessor shall reasonably request, and without any request shall furnish to the Lessor:

(i)    as soon as available and in any event no later than 120 days after the close of each fiscal year of the Lessee, financial statements for such fiscal year, including the balance sheet as of the close of such period and the statements of income, retained earnings and cash flows of the Lessee for such period, each in reasonable detail showing in comparative form the figures for the previous fiscal year, accompanied by a written review or audit of such financial statements by a firm of independent public accounts acceptable to the Lessor;

(ii)    as soon as available and in any even no later than 30 days after the last day of each fiscal quarter of the Lessee, unaudited quarterly financial statements of the Lessee, including an unaudited balance sheet of the last day of such period and the statements of income, retained earnings and cash flows of the Lessee for such period, each in reasonable detail showing in comparative form the figures for the corresponding period in the prior fiscal year, prepared by the Lessee in accordance with GAAP, and certified by the an independent public accountant or other officer acceptable to the Lessor; and

(iii)    at the time of the delivery of the financial statements in clause (a)(i) above, and within 30 days after the end of the second fiscal quarter of the Lessee, a certificate signed by an independent public accountant or an authorized officer of the Lessee acceptable to the Lessor (1) stating the Lessee has made a review of activities during the applicable reporting period and no event of default has occurred under the Master Lease during such period, or, if an event of default has occurred, describing such event of default and the actions the Lessee plans to take in response thereto, and (2) demonstrating whether the Lessee is in compliance with the covenants set forth in Sections 23(b) and (c) hereof, and a calculation of its performance with respect to the such covenants.

Addendum to Master Lease – 12/15/2021                                                                 Page 3

(b)    *Fixed Charge Coverage Ratio.* The Lessee shall maintain as of each June 30 and December 31, commencing December 31, 2021, a ratio of EBITDA to Fixed Charges of at least 1.25 to 1.0.

(c)    *Funded Debt to EBITDA.* Lessee shall maintain, as of the last day of each June 30 and December 31, commencing December 31, 2021, a ratio of Funded Debt to EBITDA of at least 3.5 to 1.0.

(d)    *Definitions.* Capitalized terms used in this Addendum that are not defined in the Original Master Lease shall have the following meanings:

*"Capital Expenditures"* means, with respect to any Person for any period, the aggregate amount of all expenditures (whether paid in cash or accrued as a liability) by such Person during that period for the acquisition or leasing (pursuant to a Capital Lease) of fixed or capital assets or additions to property, plant, or equipment (including replacements, capitalized repairs, and improvements) which should be capitalized on the balance sheet of such Person in accordance with GAAP.

*"Capital Lease"* means any lease of Property which in accordance with GAAP is required to be capitalized on the balance sheet of the Lessee.

*"Capitalized Lease Obligation"* means, for any Person, the amount of the liability shown on the balance sheet of such Person in respect of a Capital Lease determined in accordance with GAAP.

*"EBITDA"* means, with reference to any period, Net Income for such period plus all amounts deducted in arriving at such Net Income amount in respect of (a) Interest Expense for such period, (b) federal, state, and local income taxes for such period, and (c) all amounts properly charged for depreciation of fixed assets and amortization of intangible assets for such period on the books of the Lessee.

*"Fixed Charges"* means, with reference to any period, the sum of (a) all scheduled payments of principal paid or required to be paid during such period with respect to Indebtedness of the Lessee and its Subsidiaries, (b) Interest Expense paid or required to be paid for such period, and (c) federal, state, and local income taxes (and franchise taxes in lieu of income taxes) paid or required to be paid by the Lessee and its Subsidiaries during such period.

*"Fixed Charge Coverage Ratio"* means, at any time the same is to be determined, the ratio of (a) EBITDA for the four (4) consecutive fiscal quarters of the Lessee then most recently completed *less* Unfinanced Capital Expenditures of the Lessee and its Subsidiaries during such period to (b) Fixed Charges for the same four (4) consecutive fiscal quarters of the Lessee then ended.

*"Funded Debt"* means, at any time the same is to be determined, the sum (but without duplication) of (a) all Indebtedness of the Lessee at such time, and (b) all Indebtedness of any other Person which is directly or indirectly guaranteed by the Lessee or which the Lessee has

agreed (contingently or otherwise) to purchase or otherwise acquire or in respect of which the Lessee has otherwise assured a creditor against loss.

*"GAAP"* means generally accepted accounting principles set forth from time to time in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the U.S. accounting profession), which are applicable to the circumstances as of the date of determination.

*"Indebtedness"* means for any Person (without duplication) (a) all indebtedness created, assumed or incurred in any manner by such Person representing money borrowed (including by the issuance of debt securities), (b) all indebtedness for the deferred purchase price of property or services (other than trade accounts payable arising in the ordinary course of business which are not more than ninety (90) days past due), (c) all indebtedness secured by any Lien upon Property of such Person, whether or not such Person has assumed or become liable for the payment of such indebtedness, (d) all Capitalized Lease Obligations of such Person, (e) all obligations of such Person on or with respect to letters of credit, bankers' acceptances and other extensions of credit whether or not representing obligations for borrowed money, and (f) all net obligations of such Person under any interest rate, foreign currency, and/or commodity swap, exchange, cap, collar, floor, forward, future or option agreement, or any other similar interest rate, currency or commodity hedging arrangement.

*"Interest Expense"* means, with reference to any period, the sum of all interest charges (including imputed interest charges with respect to Capitalized Lease Obligations and all amortization of debt discount and expense) of the Lessee and its Subsidiaries for such period determined on a consolidated basis in accordance with GAAP.

*"Net Income"* means, with reference to any period, the net income (or net loss) of the Lessee and its Subsidiaries for such period as computed on a consolidated basis in accordance with GAAP.

*"Person"* means any natural Person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

*"Subsidiary"* means, as to any particular parent corporation or organization, any other corporation or organization more than 50% of the outstanding voting stock of which is at the time directly or indirectly owned by such parent corporation or organization or by any one or more other entities which are themselves subsidiaries of such parent corporation or organization. Unless otherwise expressly noted herein, the term *"Subsidiary"* means a Subsidiary of the Lessee or of any of its direct or indirect Subsidiaries.

*"Unfinanced Capital Expenditures"* means, with respect to any period, the aggregate amount of Capital Expenditures made by the Lessee and its Subsidiaries during such period to the extent permitted by the Master Lease and not financed with proceeds of Indebtedness.

5. *Further Assurances.* Lessee shall obtain and deliver to Lessor and/or promptly execute or otherwise authenticate any documents, filings, waivers (including any landlord and mortgagee waivers), releases and other records, and will take such further action as Lessor may reasonably request in furtherance of or to clarify Lessor's rights under this Addendum and in the Equipment.

6. *Original Master Lease Otherwise to Remain in Full Force and Effect.* All references to "this lease" in the Original Master Lease shall be deemed to incorporate the terms and conditions of the Original Master Lease as amended by this Addendum. Except as otherwise expressly provided in this Addendum, the Original Master Lease shall remain in full force and effect as originally executed and delivered. Reference to this Addendum need not be made in any document, agreement, letter, certificate or any communication issued or made subsequent to or with respect to the Original Master Lease, it being hereby agreed that any reference to the Original Master Lease shall be sufficient to refer to the Original Master Lease, as hereby supplemented.

7. *Severability.* In the event any provision of this Addendum shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

8. *Execution in Counterparts.* This Addendum may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

9. *Applicable Law.* This Addendum shall be governed by and construed in accordance with Federal law, and to the extent not preempted by Federal law, by the laws of the State of Minnesota as provided in Section 20 of the Original Master Lease. In the event of any ambiguity or conflict as between the terms of this Addendum and the Original Master Lease, the terms of this Addendum shall control.

10. *Captions.* The captions or headings in this Addendum are for convenience only and in no way define, limit or describe the scope or intent of any provisions or sections of this Addendum.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to Master Lease to be executed as of the day and year first above written.

This Addendum to Master Lease shall not be binding upon Lessor until accepted by Lessor at its office in Plymouth, Minnesota

Accepted: _12, 24, 2021_                    Date of Addendum: December 15, 2021

LESSOR: THE HUNTINGTON NATIONAL BANK

By: _____
Name: _Jean Holslin_
Title: _VP Operations_

LESSEE:  NCP MANAGEMENT, LLC.

By: _____
Name:        Mirza N. Baig
Title:        Manager

LESSEE:   NORTH HOUSTON SURGICAL HOSPITAL LLC DBA SPRING HOSPITAL

By: _____
Name:        NCP Management, LLC.
Title:        Mirza N. Baig - Manager

By: _____
Name:        Rashid Syed
Title:        Manager/CEO

ORIGINAL

*Signature Page to Addendum to Master Lease*